**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| JOHN FRALISH, <br> *on behalf of himself and all similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> BEACON HEALTH SYSTEM, INC., <br><br> Defendant. | Case No. **3:20-cv-00917** <br><br> **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT** |

Plaintiff, John Fralish ("Plaintiff"), on behalf of himself and all similarly situated individuals, by counsel, hereby files the following complaint against the Defendant, Beacon Health System, Inc. ("Defendant") for violations of the Federal Fair Credit Reporting Act and his right to privacy.

**PRELIMINARY STATEMENT**

1. This is an action for actual, statutory and punitive damages, costs and attorneys' fees brought pursuant to 15 U.S.C. §§ 1681, *et seq.*, the Fair Credit Reporting Act ("FCRA"). This cause arises from the unlawful conduct of Defendant in systematically accessing and using consumer reports, including Plaintiff's, without a permissible purpose in order to fraudulently charge consumer/medical patients twice for the same treatment in violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*.

2. In violating the FCRA, as fully set forth below, Defendant caused Plaintiff to be injured by invading his privacy, which is protected by the FCRA, and from which injuries the FCRA is specifically designed to protect. The Plaintiff has a right to privacy of

1

his personal consumer and credit information granted by Congress and specifically engrossed in the statute itself.

3. Defendant knew of its duties under the FCRA. Despite that knowledge, Defendant established a procedure which mandated that Defendant access Plaintiff's consumer report when it had no permissible purpose to do so.

4. Plaintiff's injuries included, but are not limited to, invasion of his privacy, publication of his consumer report to a third party without a permissible purpose to do so, infliction of emotional distress, inconvenience, humiliation, damage to his reputation, loss of time from work, loss of time from his family, interference with his relationships, loss of money, loss of sleep, physical distress.

## JURISDICTION

5. The Court has federal question jurisdiction conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

6. Plaintiff lives in this district and Defendant has established its principal place of business in this District.

7. Venue is proper as all relevant events occurred in this District.

## PARTIES

8. Plaintiff is a natural person and resident of St. Joseph County, Indiana. He is a consumer as defined in the FCRA, 15 U.S.C. § 1681a.

9. Defendant is a medical provider in the "Business Services Sector Industry" accepting patients throughout Indiana. Defendant's principal place of business is located at 615 North Michigan Street South Bend, Indiana 46601. Defendant's CEO is Kreg

Gruber. Defendant is a "person" and a "user" of "consumer reports" to access personal insurance information of "consumers" as those terms are defined by the FCRA, 15 U.S.C. § 1681a.

## STATEMENT OF FACTS

10. On or about August 4, 2018, Plaintiff visited Defendant's urgent care facilities in South Bend, Indiana, to seek medical care.

11. At the time of Plaintiff's treatment, he paid his bill in full with his Visa credit card.

12. Following payment in full, Plaintiff did not receive any communication from Defendant that he owed any additional amount.

13. Plaintiff did not provide Defendant with any insurance information, nor did he provide permission to contact any insurance providers about his insurance status.

14. Plaintiff did not authorize Defendant to bill any third party or disclose that he sought treatment to any third party, including but not limited to any insurance company.

15. Plaintiff did not authorize Defendant to obtain a consumer report about him.

16. Plaintiff did not authorize Defendant to obtain any consumer or insurance information about him.

17. On or about October 2, 2018, Plaintiff again visited Defendant's urgent care facilities in South Bend, Indiana, to seek medical care.

18. At the time of Plaintiff's treatment, he paid his bill in full with his Visa credit card.

19. Following payment in full, Plaintiff did not receive any communication from Defendant that he owed any additional amount.

20. Plaintiff did not provide Defendant with any insurance information, nor did he provide permission to contact any insurance providers about his insurance status.

21. Plaintiff did not authorize Defendant to bill any third party or disclose that he sought treatment to any third party, including but not limited to any insurance company.

22. Plaintiff did not authorize Defendant to obtain a consumer report about him.

23. Plaintiff did not authorize Defendant to obtain any consumer or insurance information about him.

24. Despite having no permissible purpose to do so, at a date and time known to Defendant, Defendant requested and received a specialty consumer report about Plaintiff from non-party Trans Union, LLC ("Trans Union") which included Plaintiff's private medical insurance policy information.

25. Upon information and belief, based on information that Defendant learned in the consumer report purchased from Trans Union, and despite the fact that Defendant had already been paid in full for treating Plaintiff, Defendant nonetheless billed Plaintiff's health insurance company for treatments received at his urgent care visits.

26. Plaintiff was completely unaware that Defendant had billed his insurance company without any authorization to do so until he received communication from his insurance company informing him that an additional payment had been requested by Beacon and that his insurer had paid.

27. Understandably concerned, on or about December 3, 2018, Plaintiff contacted Defendant to complain about being double billed for treatments which had already been paid in full.

28. Thereafter, Plaintiff was contacted by a billing manager in a follow-up phone call.

29. Defendant's billing manager informed Plaintiff that it is Defendant's policy and procedure to obtain a consumer report about self-paying patients, without authorization to do so, and to bill insurance companies regardless of whether the patient has satisfied the account and paid for treatment in full.

30. Defendant's billing manager informed Plaintiff that Defendant had followed its established policies and procedures by pulling Plaintiff's consumer report without authorization to do so.

31. Defendant's billing manager informed Plaintiff that Defendant had followed its established policies and procedures by billing Plaintiff's insurance company despite the fact that Defendant had already been paid for services rendered.

32. Thereafter Plaintiff informed the insurance company that Defendant had already been paid.

33. Upon information and belief, Defendant refunded Plaintiff's insurance company the amount that it had double billed for Plaintiff's treatments.

34. Under 15 U.S.C. § 1681b(f), Defendant was required to have an enumerated, lawful purpose to obtain Plaintiff's insurance-purpose consumer credit report. In fact,

Defendant did not have any lawful purpose to request access to Plaintiff's consumer credit report. Any purported lawful purpose is false and fraudulent.

35. Defendant knowingly, willfully and/or recklessly gained access to Plaintiff's consumer report under false pretenses, under the pretext that Plaintiff had not paid for services rendered and therefore it needed to bill Plaintiff's insurance, in violation of 15 U.S.C. § 1681q and 15 U.S.C. § 1681n.

36. Upon information and belief, Defendant knowingly, willfully, and/or recklessly gains access to its self-pay customers/medical patients' consumer reports by falsely certifying that it is for the purpose of obtaining insurance information necessary to bill for unpaid accounts.

37. Upon information and belief, Defendant knowingly, willfully, and/or recklessly gains access to other individuals' consumer reports without having permission or written authorization from the person about whom the consumer report is obtained.

38. The permissible purpose provisions of the Fair Credit Reporting Act have been in effect for over 40 years, and the permissible purpose provision has been interpreted by courts nationwide firmly establishing that no one may obtain a consumer report without first having a permissible purpose to do so.

39. Without having a permissible purpose or without having information sufficient to verify that Plaintiff and other consumers similarly situation had authorized access to their consumer reports, Defendant provided false certification in order to obtain such information from consumer reporting agencies.

40. Defendant caused Plaintiff and all members of the putative class to be injured by invading their privacy, which is protected by the FCRA, and from which injuries the FCRA is specifically designed to protect.

41. Plaintiff and the putative class members have a right to privacy of their personal consumer and credit information granted by Congress and specifically engrossed in the statute itself.

42. Defendant's violations of the express letter of the statute caused an invasion of Plaintiff's privacy, and the privacy of all putative class members. This invasion of privacy is the harm which the FCRA was enacted to prevent. This harm caused Plaintiff damages in the form of anxiety, frustration, confusion, mental pain and anguish, and embarrassment.

43. Defendant's conduct against Plaintiff was willful.

44. As a matter of practice, Defendant willfully and repeatedly obtains consumer reports without a permissible purpose and without the authorization to do so in an effort to defraud consumer/patients and their insurance companies, double-billing for services for which the consumer/patients have paid in full.

45. Defendant's procedures and conduct were carried out as Defendant intended and were not a mere accident or mistake. Defendant's actions constituted its standard procedures and policy of conducting business.

46. Defendant is well aware of its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA, judicial decisions

interpreting the Act, and the promulgations of regulations by the Federal Trade Commission and the Consumer Financial Protection Bureau.

47. Upon information and belief, Defendant has an agreement with TransUnion and other consumer reporting agencies, which require it to comply with the FCRA.

48. Upon information and belief, Defendant obtained or had available substantial written material that informed it of its duties under the FCRA.

49. Despite knowing of these legal obligations, Defendant acted consciously and willfully in breaching its known duties and depriving Plaintiff of his rights under the FCRA.

50. Plaintiff alleges that Defendant's conduct as alleged herein was consistent with its established and systematically executed procedures and policies of noncompliance with the FCRA.

51. Defendant's willful conduct entitles Plaintiff and all persons similarly situated to recover punitive damages, statutory damages, actual damages, and costs and attorneys' fees for its violations of the FCRA. 15 U.S.C. § 1681n.

52. In the alternative, Defendant negligently failed to comply with the Fair Credit Reporting Act in accessing Plaintiff's consumer report, in violation of 15 U.S.C. § 1681o.

53. In the alternative, Defendant negligently failed to comply with the Fair Credit Reporting Act in obtaining consumer reports about putative class members in violation of 15 U.S.C. § 1681o.

54. Defendant's negligent violation of the FCRA entitles Plaintiff and all persons similarly situated to recover actual damages and costs and attorneys' fees for its violations of the FCRA. 15 U.S.C. § 1681o.

55. The number of individuals whose credit Defendant has accessed in an illegal manner for the purpose of defrauding consumer/patients and their insurance companies (similar to Plaintiff) is likely numerous.

### COUNT I
### CLASS CLAIM FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681b

56. Plaintiff realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if they were fully set out herein.

57. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this claim for himself and on behalf of a classes initially defined as:

> **a. § 1681b(f) Impermissible Purpose Class**
>
> All natural persons residing in the United States: (1) within five years prior to the filing of the Complaint through the date of class certification; (2) whose consumer reports were obtained by Beacon; (3) without Beacon having first obtained permission from the consumer; or (4) other permissible purpose to do so; (5) where Beacon failed to accurately and lawfully certify a permissible purpose.
>
> The Plaintiff is a member of this class.

58. **Numerosity: Fed. R. Civ. P. 23(a)(1).** Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of

the class members are identifiable through the internal business records maintained by Defendant, including email addresses, phone numbers and postal addresses. The class members may be notified of the pendency of this action through mail and/or email.

59. **Predominance of Common Questions of Law or Fact: Fed. R. Civ. P. 23(a)(2).** Common questions of both law and fact exist as to all members of each putative class. There are no factual or legal issues that differ between the putative class members. These questions predominate over questions affecting only individual class members. The principal issues are: (a) whether Defendant obtained a consumer report about Plaintiff and each putative class member without a permissible purpose and/or without authorization from Plaintiff or each putative class member; and (b) whether Defendant's violations were negligent, reckless, knowing or intentionally committed in disregard for the rights of the Plaintiff and putative class members.

60. **Typicality. Fed. R. Civ. P. 26(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Although the claims of the Plaintiff and class members do not need to be identical, in this case, the Plaintiff's claims are identical to the putative class members. For the Plaintiff and each class member, Defendant obtained a consumer report based on the misrepresentation that the report was being obtained for insurance billing purposes. The Plaintiff's claim and the class member claims are based on the same facts and legal theories.

61. **Adequacy of Representation. Fed. R. Civ. P. 23(b)(3).** Both Plaintiff and his counsel are adequate to represent the interests of the class. Plaintiff's interests are coincidental, and are not antagonistic, to the interest of the class members. Plaintiff has

retained experienced counsel who are competent in both class action litigation and the Fair Credit Reporting Act. Neither Plaintiff nor counsel have interests that prevent vigorous prosecution of the case on behalf of the class.

62. **Superiority. Fed. R. Civ. P 23(b)(3).** Questions of law and fact common to the Class members predominate over question affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, class members would not have known that Defendant obtained consumer reports about them without a permissible purpose without Plaintiff's discovery. It would be difficult for class members to individually learn of the facts uniquely in Defendant's possession and to know that they give rise to the FCRA claims in this lawsuit. Then, each one would have to find a lawyer, then be able to afford and initiate individual litigation. Individualized litigation presents the possibility for inconsistent outcomes and contradictory judgments, increases delay and expense to all parties and to the courts. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based on a single set of proofs.

63. Defendant was able to obtain Plaintiff's credit report when it certified to the consumer reporting agency the "purpose" for which the report was being sought. Upon information and belief, Defendant misrepresented the purpose because it did not obtain Plaintiff's permission to obtain his consumer report.

64. Defendant obtained Plaintiff's credit report for the asserted purpose of insurance billing. This is false. Defendant had no legal right whatsoever to bill Plaintiff's insurance provider for medical services for which Plaintiff had already paid in full at the time of treatment. Plaintiff did not have an outstanding balance and furthermore did not authorize Defendant to access his personal consumer information.

65. Defendant knew that it misrepresented the purpose for which it accessed Plaintiff's report. Defendant knew that it did not have permission from Plaintiff to obtain Plaintiff's credit report.

66. Defendant's intrusion was either intentional, or Defendant cared so little about the duties owed under the FCRA that its conduct was carried out with reckless disregard, which gives rise to a willful violation, rendering Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant negligently failed to comply with the Fair Credit Reporting Act in obtaining Plaintiff's credit report, in violation of 15 U.S.C. § 1681o.

67. Defendant caused Plaintiff and all members of the putative class to be injured by invading their privacy, which is protected by the FCRA, and from which injuries the FCRA is specifically designed to protect. Plaintiff and the putative class members have a right to privacy of their personal consumer and credit information granted by Congress and specifically engrossed in the statute itself. Defendant's willful or negligent violations of the express letter of the statute caused an invasion of Plaintiff's privacy, and the privacy of all putative class members. This invasion of privacy is the harm which the FCRA was

enacted to prevent. This harm caused Plaintiff damages in the form of anxiety, frustration, confusion, mental pain and anguish, and embarrassment.

68. Plaintiff and the class are entitled to recover actual, statutory, and punitive damages, costs and attorneys' fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n & 1681o.

WHEREFORE, the Plaintiff and the putative class members demand a declaration that Beacon has violated the Fair Credit Reporting Act as to the representative plaintiff and the class; entry of judgment for statutory, actual, and punitive damages against the Defendant; for attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate; and such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted: October 27, 2020.

**PRICE LAW GROUP, APC**

s/ *David A. Chami*
David A. Chami, Esq.
8245 N 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
F: (818) 600-5415
E: david@pricelawgroup.com
*Class Counsel*